UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY D. DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-312 CAS |
| | ) | |
| SEAFARERS INTERNATIONAL UNION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on remaining defendants Seafarers Pension Plan ("Pension Plan") and Seafarers Money Purchase Pension Plan's ("Money Purchase Plan") motion for summary judgment.[1] Plaintiff, who is proceeding pro se, has not responded to the motion, and the time to do so has expired.[2] For the following reasons, defendants' motion for summary judgment will be granted.

---

[1] On July 30, 2018, the Court granted defendant Seafarers International Union's (SIU) motion to dismiss, finding SIU was not a proper party as to plaintiff's claims for benefits. Doc. 31.

[2] Defendants filed their motion for summary judgment on June 22, 2018, to which plaintiff did not file a timely response. On August 16, 2018, the Court ordered plaintiff to file a response to defendants' motion for summary judgment. In the Order, plaintiff was warned that if he failed to file a response in opposition on or before August 31, 2018, the Court would decide defendants' motion without a response from plaintiff. On September 4, 2018, after the deadline to respond had passed, plaintiff filed a motion for appointment of counsel, stating that he was unable to respond to defendants' motion without the assistance of counsel. On September 6, 2018, the Court denied plaintiff's motion, and wrote: "the motion [for summary judgment] does not involve complex legal issues, but rather it involves factual issues as to whether plaintiff complied with the terms of the plans and met eligibility requirements. Plaintiff should have factual information regarding these issues available to him, and plaintiff has not explained why he is not capable of responding to the summary judgment motion pro se." Doc. 37 at 1. Plaintiff did not request additional time to respond to the motion for summary judgment. The Court, therefore, will consider defendants' motion for summary judgment without a response from plaintiff.

## I. Procedural Background

This is an action brought by plaintiff Timothy D. Dean under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., seeking pension benefits. In his Complaint, plaintiff alleges he joined the U.S. Merchant Marines in March 1975 and began employment as a tugboat cook in the steward department in 1976. Plaintiff alleges he was eligible for and participated in the Pension Plan and Money Purchase Plan until he left his position in 1981.

Plaintiff alleges that during the years of 1976 to 1981, he contributed approximately $85,000.00 into the Money Purchase Plan and the Pension Plan, but was only paid $3,537.04 after submitting an application for distribution. Plaintiff attached four exhibits to his complaint:[3] (1) a Form 1099, issued by the Money Purchase Plan, reflecting a gross distribution to plaintiff in the amount of $3,367.37; (2) a letter from the Money Purchase Plan to plaintiff, dated July 22, 2008, reflecting a final net distribution of his voluntary contributions in the amount of $169.67; (3) a letter from the Social Security Administration to plaintiff, dated February 15, 2018, evidencing that plaintiff has been disabled since April 30, 2010, and receiving monthly supplemental income benefits; and (4) a letter from the Pension Plan to plaintiff, dated August 12, 2013, which states that plaintiff is not eligible for benefits under the plan. Plaintiff seeks a determination from this Court that he is owed benefits from the Pension Plan and additional benefits from the Money Purchase Plan.

Defendants Pension Plan and Money Purchase Plan move for summary judgment. Defendant Pension Plan argues plaintiff is barred from bringing his claim for benefits because he failed to

---

[3] The attachments are part of the complaint for all purposes. See Fed. R. Civ. P. 10(c); Hardridge v. Piccinini, 695 F. App'x 454, 454 (8th Cir. 2017) (unpublished per curiam).

exhaust his administrative remedies under the terms of the plan. In addition, defendant Pension Plan argues plaintiff is not entitled to benefits under the plan because he does not meet the eligibility requirements. Defendant Money Purchase Plan also argues that plaintiff failed to exhaust his administrative remedies. Defendant Money Purchase Plan further argues that plaintiff was paid all the benefits to which he was entitled under the plan.

## *II. Legal Standard*

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party

3

"must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### *III. Facts*

In support of their motion for summary judgment, defendants submitted a statement of uncontroverted material facts. Plaintiff did not respond to defendants' statement of uncontroverted facts or provide the Court with a statement of material facts as to which he contends a genuine dispute exists. Accordingly, plaintiff has not met the requirements of Local Rule 4.01(E), and he is deemed to have admitted the facts in defendants' statement of uncontroverted facts.[4] Deichmann

---

[4]Local Rule 4.01(E) provides, with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000). Cf. Northwest Bank & Trust Co. v. First Ill. Nat'l Bank, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

After reviewing the record, and with the summary judgment standard in mind, the Court accepts the following facts as true for purposes of resolving defendants' motion for summary judgment:

The Pension Plan purports to be a multi-employer, defined benefit pension plan as defined in Sections 3(2)(a) and (35) and (37) of ERISA, 29 U.S.C. §§ 1002 (2)(a), (35) and (37). The Pension Plan was established in 1961 pursuant to an Agreement and Declaration of Trust ("Pension Plan Trust Agreement") for the purpose of providing retirement benefits to employees of signatories to collective bargaining agreements with the Seafarers International Union ("SIU"). Doc. 23-2 at 8. The Pension Plan is governed by a Board of Trustees in accordance with and as authorized by the Trust Agreement. Id.

Article III, Section 1(d) of the Pension Plan Trust Agreement states that the Trustees shall have the power and duty to:

> Formulate and adopt a pension program for the exclusive benefit of Employees and promulgate and establish rules and regulations for the administration and operation thereof; and in pursuance thereto (but without intent to limit such authority) formulate and establish conditions of eligibility with respect to age and length of service, qualifications for early or disability retirement, past and future service credits, the method of providing pension, the payment of premiums in the event annuity policies are part of the program, the purchase, handling, control and disposition of such policies, and all other matters which the trustees in their discretion may deem necessary or proper to effectuate the purposes and intent of the

pension program. The Trustees shall have the absolute and exclusive authority to adopt, implement, and interpret Plan Rules and Regulations necessary to carry out the policies and functions of the Plan. The Trustees shall have the sole discretion to promulgate and apply such rules and regulations as they see fit for the proper operation of the Plan.

Doc. 23-2 at 11.

At all times material to the dispute at issue in this case, Article V, Section 3 of the Pension Plan Trust Agreement stated "that the Plan(s) and all rights thereunder shall be construed in accordance with applicable Federal law and, to the extent that State law is not preempted by applicable Federal law, the law of the State of Maryland shall apply." Doc. 23-2 at 17.

Article 6, Section III of the 1979 Pension Plan Document as amended August 28, 1980 ("1980 Pension Plan Document") and Article 6, Section IV of the Seafarers Pension Plan Regulations dated January 1, 2015 ("2015 Pension Plan Document") have conditioned the receipt of pension benefits upon the approval of an application for benefits. Doc. 23-2 at 42 and 81. Article 6, Section II of both the 1980 and 2015 Pension Plan Documents states:

  A. If an employee's application for pension benefits is denied, he shall receive a statement in writing from the Plan indicating the reason for the denial.

  B. Any employee whose application is denied may have his case reviewed by the Trustees, or a committee of the Trustees designated to review such cases. An employee's request for review must be made to the Plan in writing within 90 days from the date he receives notice that his application has been denied.

  C. In reviewing a case, the Trustees shall consider any materials which were submitted in support of the employee's application, any written statement the employee may wish to make in support of his appeal and any further documentary evidence in support of the appeal which the employee may wish to submit.

  D. The decision of the Trustees, or a designated committee of the Trustees shall be final and binding on all persons.

Doc. 23-2 at 42 and 82.

Article 6, Section III of the 2015 Pension Plan Document states:

> Legal action based upon the Plan's denial of benefits must be commenced no later than two (2) years after the Plan informed the participant that his or her application for benefits was denied; or in the event that the participant appealed the Plan's decision to the Board of Trustees, no later than two (2) years after the date that the Trustees informed the participant that his or her appeal for benefits was denied.

Doc. 23-2 at 82.

At all times material hereto, Article 4, Section V.A of the 1980 and 2015 Pension Plan Documents states:

> A.    An employee shall be eligible to retire on a Disability Pension if:
>
> 1.    he has credit for at least 4,380 days of Service;
>
> 2.    he has credit for at least 125 days of Service in the calendar year preceding his date of application; and
>
> 3.    he is totally and permanently disabled.

Doc. 23-2 at 31 and 68.

At all times material to this dispute, Article 4, Section I.A of 1980 and 2015 Pension Plan Documents states that "Upon reaching Normal Retirement Age an employee shall be entitled to retire on a Regular Normal Pension if he has credit for at least 5,475 days of Service." Doc. 23-2 at 29 and 66. Article 4, Section II.A of the 1980 and 2015 Pension Plan Documents states that an employee who last earned service prior to January 1, 1999 "Upon reaching Normal Retirement Age . . . shall be entitled to retire on a Deferred Vested Pension if he has credit for at least 10 Years of Service . . . ." Id.

At all times material to this dispute, Article 4, Section III.A of the 1980 and 2015 Pension Plan Documents states that an employee shall be eligible to receive an Early Normal Pension upon reaching age 55, if he has received credit for at least 7,300 days of Service and has credit for at least

7

125 days of Service during the calendar year preceding his date of application. Doc. 23-2 at 29 and 66. Article 4, Section IV of the 1980 and 2015 Pension Plan Documents states that an employee who does not have credit for at least 125 days of Service during the calendar year preceding his date of application shall be eligible to retire on an Special Early Normal Pension upon reaching age 55, if he has received credit for at least 7,300 days of Service and his last day of Service was prior to his 55th birthday. Doc. 23-2 at 29 and 66. Article 2, Section B.1 of the 1980 and 2015 Pension Plan Documents states that "an employee shall receive credit for a Year of Service if he receives credit for at least 125 days of Service during any calendar year." Doc. 23-2 at 25 and 62.

Plaintiff was a participant in the Pension Plan. He earned three (3) Years of Service based on the following days of Service:

| Year | Days of Service |
|------|-----------------|
| 1976 | 231 |
| 1977 | 171 |
| 1978 | 90 |
| 1979 | 134 |
| 1980 | 80 |

Total Days of Service = 706

Doc. 23-4 at 4 and 95.

On August 7, 2013, plaintiff sent a letter to the Pension Plan requesting a pension "work-up." Doc. 23-4 at 96. Plaintiff wrote: "This letter is a request for my Pension Plan work-up. I've recently become disabled and wish to file for possible disability benefits from Seafarers Pension Plan." Id. On August 12, 2013, the Pension Plan sent a letter to plaintiff in response to his August 7, 2013 request stating:

> According to Plan records for the period 1976 through 1980 you have accumulated approximately 3 years of vesting service. This is 7 years short of the 10 years

8

required for the Deferred Vested Pension. Based on the foregoing you are not eligible for any type of pension from the Plan.

Doc. 23-4 at 97. Plaintiff did not file an application for benefits with the Pension Plan or submit an appeal to the Trustees. Doc. 23-4 at 4.

The Money Purchase Plan purports to be a multi-employer, defined contribution plan as defined as Sections 3(2)(a), (34) and (37) of ERISA, 29 U.S.C. §§ 1002 (2)(a), (34) and (37). The Money Purchase Plan was established in 1996 pursuant to an Agreement and Declaration of Trust ("Money Purchase Plan Trust Agreement") for the purpose of providing retirement benefits to employees of employers who were signatory to collective bargaining agreements with the SIU. Doc. 23-2 at 112. The Money Purchase Plan is governed by a Board of Trustees in accordance with and as authorized by the Money Purchase Plan Trust Agreement. Id.

Article VI, Section 4 of the Money Purchase Plan Trust Agreement states:

The Trustees … shall have full authority to determine all questions of coverage and qualifications to participate in and receive the benefits of the Plan and shall have full and complete discretion to construe the terms and provisions of this Agreement and the Rules and Regulations of this Plan and any such questions so determined or any construction so adopted by the majority of Trustees shall be binding upon all parties.

Doc. 23-2 at 121.

At all times material hereto, Article VIII, Section 4 of the Money Purchase Plan Trust Agreement states, "The Plan and all rights thereunder shall be interpreted and construed in accordance with applicable Federal law and, to the extent that State law is not preempted by applicable Federal law, the law of the State of Maryland shall apply." Doc. 23-2 at 123.

The Money Purchase Plan has been funded through contributions made by employers and through voluntary contributions made by participants. Employer contributions are held in Employer

9

Contribution Accounts while voluntary contributions are held in Voluntary Contribution Accounts. Doc. 23-3 at 10.

Plaintiff did not have an Employer Contribution Account with the Money Purchase Plan. Doc. 23-3 at 2. Plaintiff made voluntary contributions to a Voluntary Contribution Account with the Great Lakes Tug and Dredge Plan. Id. The Great Lakes Tug and Dredge Plan was terminated on January 1, 2005. Id. On February 13, 2006, a total of $3,204.57, representing the value of plaintiff's Voluntary Contribution Account with the Great Lakes Tug & Dredge Pension Plan, was transferred to the Money Purchase Plan and deposited into a Voluntary Contribution Account established for plaintiff. Doc. 23-3 at 2 and 30.

Section 7.01 of the Seafarers Money Purchase Plan Rules and Regulations ("Money Purchase Plan Document") states:

> Section 7.01 <u>Normal Retirement and Withdrawal Benefits</u>
>
> The Employee shall choose to have his Normal Retirement or Withdrawal Benefit arising from his Voluntary Contribution Account paid in one of the following forms:
>
> (a) Annual Retirement Benefit equal to one-tenth of his/her Accumulated Share. The initial payment shall be as soon as practicable after an application is received by the Fund Office. On each first day of February during the succeeding nine-year period, the Fund shall pay an additional amount equal to the amount of the first payment. If death occurs before the participant has received an amount equal to his/her Accumulated Shares, the balance shall be paid in a lump sum. With respect to annual benefit payments, each year the Trustees shall distribute the amount of interest earned on each account as soon as the valuation is completed.
>
> (b) A Lump-Sum Benefit, which shall be equal to the accumulated Share in his Voluntary Contribution Account.

Doc. 23-3 at 21. Section 7.02 of the Money Purchase Plan Document states: "The Payout Benefit shall not exceed the amount the Employee contributed to his Voluntary Contribution Account." Id.

10

On March 23, 2007, plaintiff applied for Lump Sum Withdrawal Benefit. Doc. 23-3 at 31-2. On April 30, 2007, plaintiff received a Lump Sum Withdrawal Benefit of $3,367.37. Doc. 23-3 at 33. On July 21, 2008, plaintiff received a final Lump Sum Withdrawal Benefit distribution of $169.67. Doc. 23-3 at 34. The April 30, 2007 and July 21, 2008 Lump Sum Withdrawal Benefit payments totaled $3,537.04, which was equal to plaintiff's accumulated Share in his Voluntary Contribution Account and did not exceed the amount plaintiff contributed to his Voluntary Contribution Account, plus interest. Doc. 23-3 at 2.

At all times material hereto, Section 8.07 of the Money Purchase Plan Document stated:

> An Employee whose application for benefits under this Plan has been denied, in whole or in part, is to be provided with adequate notice in writing setting forth specific reasons for such denial, and shall have the right to appeal the decision, by written request filed with the Trustees within ninety (90) days after receipt of such notice. The appeal shall be considered by a person or committee designated by the Trustees.

Doc. 23-3 at 22.

Since October 1, 1999, Section 8.08 of the Money Purchase Plan Document stated:

> Legal action based upon the Plan's denial of benefits must be commenced no later than two (2) years after the Plan informed the participant that his or her application for benefits was denied; or in the event that the participant appealed the Plan's decision to the Board of Trustees, no later than two (2) years after the date that the Trustees informed the participant that his or her appeal for benefits was denied.

Doc. 23-3 at 24.

Plaintiff did not file an application for benefits with the Money Purchase Plan, other than the March 23, 2007 application for Lump Sum Withdrawal Benefits. Plaintiff did not submit an appeal to the Trustees related to the payment of Lump Sum Withdrawal Benefits. Doc. 23-3 at 2-4.

### *IV. Discussion*

ERISA "is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." Minnesota Ch. of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety, 267 F.3d 807, 810 (8th Cir. 2001) (quotations omitted). Congress enacted ERISA "to regulate comprehensively certain employee benefit plans and 'to protect the interests of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries.'" Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 628 (8th Cir. 2001) (quoting Wilson v. Zoellner, 114 F.3d 713, 715-16 (8th Cir. 1997)). The Court finds plaintiff's claims fall under the purview of ERISA. Prudential Ins. Co. of Am. v. National Park Med. Ctr., Inc., 413 F.3d 897, 906-7 (8th Cir. 2005).

### A. Plaintiff Failed to Exhaust His Administrative Remedies under the Pension Plan.

Defendant Pension Plan argues that plaintiff is barred from bringing a claim against the Pension Plan because he failed to exhaust his administrative remedies before bringing this suit. ERISA itself does not have an exhaustion requirement. That said, "when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust [his or] her administrative remedies bars [him or] her from asserting any unexhausted claims in federal court." Burds v. Union Pac. Corp., 223 F.3d 814, 817 (8th Cir. 2000). Under Eighth Circuit law, claimants "must exhaust [the benefits appeal] procedure before bringing claims for wrongful denial to court." Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001). "Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred.'" Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998).

Under the terms of the Pension Plan, a person seeking benefits must file an application for benefits. The terms of the Pension Plan condition the receipt of pension benefits upon the approval of an application for benefits. If an application for benefits is denied, the claimant has 90 days from the denial of the application for benefits to appeal that decision to the Trustees of the Pension Plan. A claimant's request for review must be made to the Pension Plan Trustees in writing.

In this case, there is no evidence that plaintiff submitted an application for benefits under the Pension Plan. He did write a letter to the Pension Plan requesting a "pension work-up." The Pension Plan responded to the letter stating that plaintiff was not eligible for benefits. Plaintiff neither filed an application for benefits, nor submitted an appeal of a denial of benefits to the Plan Trustees after receiving the Pension Plan's response. Plaintiff did not pursue his administrative remedies under the Pension Plan before seeking relief in this Court and, therefore, his claim for benefits under the Pension Plan is barred. See Galman, 254 F.3d at 770.

**B.  Plaintiff is not Eligible for Benefits under the Pension Plan**

Even if plaintiff had pursued his administrative remedies under the Pension Plan, he is not entitled to relief because he is not eligible for benefits under the Pension Plan.

It is undisputed that plaintiff has 706 days of Service, which amounts to three years of Service, under the terms of the Pension Plan. Without considering other requirements, such as age, plaintiff does not qualify for any of the benefits under the Pension Plan because he does not have enough days of Service. Under the terms of the Pension Plan, an employee is eligible to retire on a Disability Pension if he has credit for 4,380 days of Service; an employee is eligible to retire on a Regular Normal Pension if he has credit for 5,475 days of Service; an employee who last served prior to January 1, 1999, is entitled to retire on a Deferred Vested Pension if he has credit for at least

13

10 years of Service; and an employee is eligible to receive an Early Normal Pension or Special Early Normal Pension if he has received credit for at least 7,300 days of Service. Plaintiff is not eligible to receive any of these benefits under the Pension Plan because he does not have enough days of Service. Defendant Pension Plan is entitled to summary judgment as a matter of law as to plaintiff's claim for benefits.

### C. Plaintiff Failed to Exhaust His Administrative Remedies under the Money Purchase Plan.

Defendants also contend that plaintiff is not entitled to benefits under the Money Purchase Plan because he failed to exhaust his administrative remedies under this plan as well. Under the terms of the Money Purchase Plan, a person seeking benefits must file an application for benefits. If an application for benefits is denied, the claimant has 90 days from the denial of the application for benefits to appeal that decision to the Trustees of the Money Purchase Plan. A claimant's request for review must be made to the Money Purchase Plan Trustees in writing.

Plaintiff applied for a Lump Sum Withdrawal Benefit. Plaintiff received two Lump Sum Withdrawal Benefit payments totaling $3,537.04. Plaintiff, however, never submitted an appeal of the benefits determination to the Money Purchase Plan Trustees. Plaintiff did not pursue his administrative remedies under the Money Purchase Plan before seeking relief in this Court and, therefore, his claim for benefits under the Money Purchase Plan is barred. See Galman, 254 F.3d at 770.

### D. Plaintiff is Not Eligible for Additional Benefits under the Money Purchase Plan.

Even if plaintiff had pursued his administrative remedies under the Money Purchase Plan, he is not entitled to relief, because he received all the benefits to which he was entitled under the Money Purchase Plan.

14

The Money Purchase Plan is a defined contribution plan. The Plan is funded through employer contributions and voluntary employee contributions. Employer contributions are held in Employer Contribution Accounts, while voluntary contributions are held in Voluntary Contribution Accounts. It is undisputed that plaintiff did not have an Employer Contribution Account. Plaintiff did make voluntary contributions to a Voluntary Contribution Account, which was transferred to the Money Purchase Plan and deposited into a Voluntary Contribution Account established for plaintiff. But it is also undisputed that plaintiff made a request for a Lump Sum Benefit, and plaintiff received two Lump Sum Withdrawal Benefit payments totaling $3,537.04. The amount plaintiff received was equal to his accumulated Share in his Voluntary Contribution Account and did not exceed the amount plaintiff contributed to this Voluntary Contribution Account, plus interest. This was the amount to which plaintiff was entitled under the terms of the Money Purchase Plan. The Court finds plaintiff is not entitled to additional benefits under the Money Purchase Plan, and defendant Money Purchase Plan is entitled to summary judgment as a matter of law as to plaintiff's claim for benefits.

### *V. Conclusion*

In sum, the Court finds defendants are entitled to summary judgment as a matter of law. It is undisputed that plaintiff did not pursue his administrative remedies under either of the plans at issue in this case and, therefore, his claims for benefits are barred. But even on the merits, plaintiff's claims fail. With respect to the Pension Plan, plaintiff is not entitled to any Pension Benefits because he does not meet the required time of service and, therefore, he does not qualify for benefits under the terms of the Pension Plan. As for the Money Purchase Plan, plaintiff received all the benefits to which he was entitled under the plan. Plaintiff was paid the accumulated Share in his Voluntary Contribution Account, and under the terms of the Money Purchase Plan, he is not entitled to additional benefits.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Seafarers Pension Plan and Seafarers Money Purchase Pension Plan's motion for summary judgment is **GRANTED**. [Doc 22].

An appropriate Judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __4th__ day of December, 2018.